## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

LISA JONES,                          CASE NO: 4:24-cv-00239

     Plaintiff,

     vs.

TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC., and
EQUIFAX INFORMATION SERVICES, LLC.

     Defendants.

———————————————————/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1.     Plaintiff, LISA JONES ("Plaintiff" or "Mrs. Jones") brings this action against TRANS UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, LLC ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Madison County, Florida.

## PARTIES

4.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Lee County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.       Defendant, Transunion LLC ("Trans Union") is a limited liability Company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

6.      Defendant, Experian Information Solutions, Inc. ("Experian") is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

7.      Defendant, Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing

information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

8.     Trans Union, Experian, and Equifax shall collectively be referred to as Credit Reporting Agencies ("the CRAs.")

## **FACTUAL ALLEGATIONS**

9.     Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> > i.     credit or insurance to be used primarily for personal, family,
> >      or household purposes;
> >
> > ii.     employment purposes; or
> >
> > iii.     any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

10.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

11.     The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRA

may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

12.     To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser- based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

13.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/ (last accessed June 6, 2024).

14.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *Id.*

15.     The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e- OSCAR.

16.     If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA

requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

17.    The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See https://www.e-oscar.org/gettingstarted  (last accessed June 6, 2024).

18.    Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

19.    Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and states that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See, https://www.transunion.com/data-reporting/support-teams  (last accessed June 6, 2024).

20.    Mrs. Jones had a revolving line of credit with Discover that she first opened on or about May 7, 2022 with an $11,000 credit limit ("Discover Account.")

21.    The Discover Account is for personal, family, or household purposes.

22.    Mrs. Jones is the victim of identity theft whose credit line with Discover was accessed to make numerous fraudulent purchases, which she disputed within sixty days of receiving her monthly statements. Because Mrs. Jones is employed by the Department of Veteran's Affairs (VA) her credit is subject to periodic reviews by the Human Resources department, which could lead to termination if her creditworthiness does not meet VA standards. Claimant is the head of her household and sole source of income because her husband is unable to work, therefore this dispute has caused significant emotional distress on her.

23.    Mrs. Jones first began to notice the unauthorized use of her Discover Account on her August 2022 to September 2022 monthly billing statement, which revealed over one hundred (100) fraudulent purchases, most of which were to a merchant listed as "LuckyLand" and ranged from $5.99 to $9.99.

24.    Among the 100 fraudulent purchases on the August 2022 to September 2022 closing statement were about fifteen fraudulent Cash App transactions to "MICHAEL CO" ranging from $5.15 to $12.36.

25.    Additionally. there was a single unauthorized purchase of $55.89 from a merchant listed as Cumberland Gasoline.

26.     Mrs. Jones called Discover to dispute the transactions immediately, which resulted in most or all of the fraudulent transactions being credited on the next two billing statements ranging from September 2022 to November 2022.

27.     Notwithstanding the above, the fraudulent transactions continued in the November 2022 to December 2022 statement, but not in the form of purchases; this time the identity thieves were transferring balances from other cards onto Mrs. Jones' Discover credit line as follows:

   **a.** 12/06/2023 for $7,722.70;

   **b.** 12/06/2023 for $230.00;

   **c.** 12/06/2023 for $155.00; and

   **d.** 12/06/2023 for $155.00.

28.     These transfers total $8,262.70, which Discover listed as "Purchases" on Mrs. Jones' November 2022 to December 2022 monthly statement. A copy will be provided to Respondent as part of the Exchange of Information.

29.     Mrs. Jones contacted Discover again to dispute the fraudulent transactions on her November 2022 to December 2022 monthly statement.

30.     Discover then inaccurately reported the inflated balance of $8,574.09 on Mrs. Jones' credit reports with the CRAs.

31.     The November 2022 to December 2022 monthly statement also showed Mrs. Jones' credit line was reduced from $11,000 to $2,000.

32.     Relatedly, Discover sent an adverse action notice to Mrs. Jones dated November 20, 2022 ("Adverse Action"). A redacted copy of the Adverse Action was attached to the original Arbitration Demand as Exhibit "A," which generally described the reduction in Mrs. Jones' credit line for the following three reasons:

        (1) Bureau reports past or present delinquency

        (2) Number of recent inquiries as reported by agency

        (3) Delinquency history on your account(s).

33.     Trans Union provided the consumer report to Discover that was used in its decision to reduce Mrs. Jones' credit line to $2,000. *See* Exhibit "A."

34.     There were five key factors that affected Mrs. Jones' credit score, which were listed as:

        (1) Serious Delinquency;

        (2) % of balances to credit limit is too high on revolving accounts;

        (3) Time since delinquency is too recent or unknown;

        (4) Number of accounts with delinquency; and

        (5) Number of Inquiries on Credit Bureau.

*See* Id.

35.     At the time of the Adverse Action, the Discover Account was the only "Serious Delinquency" on Mrs. Jones' Trans Union credit file reporting with a $16,722 balance.

36.     At the time of the Adverse Action, the Discover Account had a more than a 800% balance usage as a revolving account after the reduction of the credit line to $2,000.

37.     At the time of the Adverse Action, Mrs. Jones had multiple fraudulent credit inquiries on her credit reports that she disputed directly with the credit card companies where the identity thieves submitted fraudulent applications, which Mrs. Jones documented in a police report with the Madison County Sheriff's Office on September 26, 2022. A redacted copy of the police report is attached as part of Exhibit "B."

38.     According to the Police Report, the accounts were closed, which means the credit card companies recognized the applications as fraudulent. *See* Composite Exhibit "B."

39.     Based on information and belief, credit card companies who are aware of fraudulent applications being submitted to them, regularly notify the CRAs of such fraudulent applications so that the corresponding inquiries can be removed from a consumer's credit file.

40.    Because Discover continued to assert the fraudulent charges were valid, Mrs. Jones began disputing the Discover Account with the CRAs by phone and electronic means.

41.    Based on information and belief, Mrs. Jones began submitting her disputes to the CRAs regarding the Discover Account in February or March of 2023.

42.    In her telephonic disputes, Mrs. Jones described how the Discover Account was subjected to numerous fraudulent charges, which she was actively disputing with Discover, and that she was the victim of identity theft.

43.    Ultimately, the CRAs verified the Discover Account as accurate when Mrs. Jones disputed the information by phone and electronic means.

44.    The Discover Account is now inaccurately reporting as having an $8,000+ balance and 90 days late from March 2023 through May of 2023.

45.    On May 30, 2023, Trans Union sent a letter to Mrs. Jones advising her that it was refusing to block the information she disputed as fraudulent because it was either made in error; is a misrepresentation of material fact relevant to the request to block; and/or Mrs. Jones obtained possession of goods, services, or money as a result of the transaction at issue. A copy will be provided to Respondent as part of the Exchange of Information.

46.     Following one of Mrs. Jones disputes to Experian in May 2023, she received dispute results from Experian dated May 31, 2023 indicating that the Discover account was now being reported as a charge-off.

47.     The May 31, 2023 dispute results from Experian revealed that Discover verified its reporting of the $8,000+ balance as accurate and that the account was delinquent by 90 days. A copy will be provided to Respondent as part of the Exchange of Information.

48.     In June of 2023, Mrs. Jones disputed the Discover Account with Experian a second time, and on June 14, 2023, Experian verified that the reporting was accurate as to the balance and delinquent up to 120 days.

49.     On August 1, 2023, Mrs. Jones sent written disputes to the CRAs which detailed her dispute history with Discover, included a police report, and FTC Identity Theft Affidavit. Copies of the written disputes from August 1, 2023 are attached as Composite Exhibit "C."

50.     The CRAs reliance on DISCOVER has caused the Inaccurate Information to be sent to third parties who have viewed Plaintiff's credit reports when evaluating Plaintiff's credit worthiness.

51.     The dates when the Inaccurate Information was viewed are reflected as "Regular Inquiries" or "Hard Inquiries" on Plaintiff's consumer disclosures following the Initial and Second Dispute.

52.     One or more of the enumerated "Regular Inquiries" and/or "Hard Inquiries" have resulted in damages to Plaintiff in multiple forms, including economic and non-economic harm.

53.     Unless and until the Inaccurate Information is no longer a factor in Plaintiff being denied credit, being granted credit at increased rates, losing the opportunity to benefit from credit, or Plaintiff being forced to procure a co-signer to be granted any credit under any terms, these economic losses will continue.

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681i (AGAINST TRANS UNION FOR INITIAL AND SECOND DISPUTE)

54.     Plaintiff incorporates by reference the allegations in Paragraphs 1 – 5, 8 – 45, and 49 - 53.

55.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

56.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

57.     During the relevant time frame, Trans Union received Plaintiff's Initial Dispute and Second Dispute regarding the accuracy or completeness of the DISCOVER account appearing on Plaintiff's consumer disclosure.

58.     Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete

inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

59.     Additionally, Trans Union unreasonably relied on information provided by DISCOVER, when readily verifiable information that Plaintiff provided in the Initial Dispute and Second Dispute placed Trans Union on notice that DISCOVER's information was inaccurate and unreliable.

60.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

61.     Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

62.     As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with the Inaccurate Information being sent to third parties, damage to her reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST TRANS UNION

63. Plaintiff incorporates by reference the allegations in Paragraphs 1 – 5, 8 – 45, and 49 – 53.

64. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

65. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

66. During the relevant timeframe, Trans Union received Plaintiff's Second Dispute which requested a block of the fraudulent information regarding the Discover account.

67. Plaintiff disputed the balance of the Discover account on her Trans Union credit report, identified herself, advised Trans Union of the fraudulent charges on the Discover account, furnished Trans Union with a

copy of the Police Report, and requested that Trans Union block the fraudulent information.

68.    In response to her ID Theft Dispute, Trans Union continued to report the tradeline with the information that resulted from identity theft.

69.    Rather than block the fraudulent information or request specific additional information from Plaintiff, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

70.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

71.    Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

72.    As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from

credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

73.     Plaintiff incorporates by reference the allegations in Paragraphs 1 – 5, 8 – 45, and 49 – 53 as if fully set forth herein.

74.     At all times relevant hereto, TransUnion is and was a "consumer reporting agency" as provided for under the FCRA.

75.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

76.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

77.     Any users of credit reports that viewed the DISCOVER account saw the Inaccurate Information.

78.     Even after Plaintiff's Initial Dispute and Second Dispute, the DISCOVER account is still being reported with the Inaccurate Information.

79.     Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

80.     In the alternative, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

81.     As a result of Trans Union's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, mental and emotional distress of being denied credit or being granted credit at increased rates, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law;

and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV – VIOLATIONS OF 15 U.S.C. §1681i AGAINST EXPERIAN FOR INITIAL DISPUTE AND SECOND DISPUTE

82.     Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 44, and 46 – 53.

83.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

84.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

85.     During the relevant time frame, Experian received Plaintiff's Initial Dispute and regarding the accuracy of the account reported by DISCOVER on Plaintiff's credit report.

86.     Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

87.     Experian failed to provide any reinvestigation results following Plaintiff's Initial Dispute and Plaintiff's follow-up letter requesting same.

88.     Additionally, Experian unreasonably relied on information provided by DISCOVER and/or Home Credit, when readily verifiable

information that Plaintiff provided in her dispute(s) placed Experian on notice that DISCOVER and Home Credit's information was inaccurate.

89.    Even after Plaintiff's written dispute and follow-up, the DISCOVER account is still being reported with the Inaccurate Information.

90.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

91.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

92.    As a result of Experian's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT V– VIOLATIONS OF 15 U.S.C. 1681c-2
## AGAINST EXPERIAN

93.     Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 44, and 46 – 53.

94.     At all times relevant hereto, Experian was and is a "consumer reporting agency" as defined by the FCRA.

95.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

96.     During the relevant time period, Experian received Plaintiff's Second Dispute which requested a block of the fraudulent information regarding the Discover account.

97.     Plaintiff disputed the balance on the Discover account on her Experian credit report, identified herself, advised Experian of the fraudulent charges on the Discover account, furnished Experian with a copy of the Police Report, and requested that Experian block the fraudulent information.

98.     Rather than block the fraudulent information or request specific additional information from Plaintiff, Experian negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

99.     Alternatively, Experian failed to block the Discover account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA

requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

100.   Experian's acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

101.   In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

102.   As a result of Experian's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, , loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

## COUNT VI - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

103.   Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 6, 8 – 44, and 46 - 53.

104.   At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

105.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

106.   During the relevant time frame, Experian received Plaintiff's Initial Dispute and follow-up correspondence regarding the accuracy of the account reported by DISCOVER and/or Home Credit on Plaintiff's credit report.

107.   Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

108.   Any users of credit reports that viewed the DISCOVER account saw the Inaccurate Information.

109.   Even after Plaintiff's written disputes, the DISCOVER account is still being reported with the Inaccurate Information.

110.   Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

111.   In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

112.     As a result of Experian's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII – VIOLATIONS OF 15 U.S.C. §1681i AGAINST EQUIFAX FOR FIRST DISPUTE AND SECOND DISPUTE

113.     Plaintiff incorporates by reference the allegations in paragraphs 1 – 4, 7, 8 – 44, and 49 – 53.

114.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

115.     At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

116.     During the relevant time frame, Equifax received Plaintiff's Initial Dispute regarding the accuracy of the account reported by DISCOVER and/or Home Credit on Plaintiff's credit report.

117.     Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

118.     Additionally, Equifax unreasonably relied on information provided by DISCOVER, when readily verifiable information that Plaintiff provided in her disputes placed Equifax on notice that DISCOVER's information was inaccurate.

119.     Even after Plaintiff's written dispute(s) the DISCOVER account is still being reported with the Inaccurate Information.

120.     Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

121.     In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

122.     As a result of Equifax's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and

benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST EQUIFAX

125.  Plaintiff incorporates by reference the allegations in paragraphs 1 - 4, 7, – 44, and 49 – 53.

126. At all times relevant hereto, Equifax was and is a was and is a "consumer reporting agency" as defined by the FCRA.

126. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

160. During the relevant time frame Equifax received Plaintiff's Second Dispute which requested a block of the Discover account.

161. Plaintiff disputed the fraudulent information regarding the Discover account on her Equifax credit report, identified herself, advised Equifax of the fraudulent related to the Discover account, furnished Equifax

with a copy of the Police Report, and requested that Equifax block the fraudulent information.

163. Rather than block the fraudulent information or request specific additional information from Plaintiff, Equifax negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

164. Alternatively, Equifax failed to block the Discover account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

165. Equifax's acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

166. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

167. As a result of Equifax's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness,

receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax in the form of: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT IX – VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

123.    Plaintiff incorporates by reference her allegations in paragraphs 1 – 4, 7 – 44, and 49 -53.

124.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

125.    At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

126.    During the relevant time frame, Equifax received Plaintiff's Initial Dispute regarding the accuracy of the account reported by DISCOVER and/or Home Credit on Plaintiff's credit report.

127.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to

follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

128.   Any users of credit reports that viewed the DISCOVER account saw the Inaccurate Information.

129.   Even after Plaintiff's written dispute(s), the DISCOVER account is still being reported with the Inaccurate Information.

130.   Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

131.   In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

132.   As a result of Equifax's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount

to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

133.    Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**DEBT SHIELD LAW**
*/s/ Kevin Rajabalee, Esq.*
Fla. Bar. No. 119948
3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Main: 754-800-5299
Direct: 954-667-3096
Fax: 305-503-9457
kevin@debtshieldlaw,com
dayami@debtshieldlaw.com
service@debtshieldlaw.com